IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TINA BRUCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-cv-2734 |
| | ) | |
| LEVY PREMIUM FOODSERVICES | ) | Chief Judge Crenshaw |
| LIMITED PARTNERSHIP OF TENNESSEE, | ) | |
| and COMPASS GROUP USA, INC., | ) | Magistrate Judge Brown |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Tina Bruce ("Plaintiff" or "Bruce"), by and through undersigned counsel, does hereby file this Response to the Defendants' Motion for Summary Judgment and Memorandum of Law. (Docket Entry Nos. 34 & 36).1

**I.     INTRODUCTION.**

This is an action for sexual harassment and retaliation filed by Bruce against her former employer, Levy, as a result of her termination while employed as a suite attendant at Bridgestone Arena on or about May 5, 2015. The action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, and codified at 42 U.S.C. §§ 2000e, *et seq*.

Plaintiff contends there are disputed issues of material fact sufficient that Levy's motion for summary judgment should be denied pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.

---

1    The parties entered into a joint motion (Docket Entry No. 30) on October 4, 2017 where Defendant Compass Group USA, Inc. was dismissed without prejudice, so that the remaining defendant is Levy Premium Foodservices ("Defendant" or "Levy").

1

## II. STATEMENT OF FACTS.

Plaintiff Bruce relies on the Responses to Levy's Statement of Undisputed Material Facts (Docket Entry No. 35), along with a separate Statement of Undisputed Material Facts filed along with this memorandum of law.

Essentially, the evidence in this case shows that Tina Bruce was employed by Levy as a suite attendant at the Bridgestone Arena when she complained to her supervisor, Tim Halterman, about sexual harassment by a co-worker Jacob Caffey against another female employee, Kayla Costley. Ms. Bruce contends that as a result of her complaints about sexual harassment by Caffey, Levy began, through the actions of Halterman and Crystal Parfitt, to orchestrate a number of false allegations and write-ups as to her job performance leading up to and culminating in her termination on May 5, 2015.

As more thoroughly demonstrated herein, Plaintiff's termination was improperly motivated in whole, or in part, based on her complaints of sexual harassment about Jacob Caffey to Levy management which is sufficient evidence for a jury to decide so that motion for summary judgment should be denied.

## III. SUMMARY JUDGMENT STANDARD.

To prevail on a Rule 56 motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). To determine if the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in a light most favorable to the non-moving party. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The courts function is not to weigh the evidence and determine the truth of the matter asserted, 'but to determine whether there is a genuine issue for

trial.'" *Little Caeser Enters, Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "A genuine dispute between the parties on an issue of material facts must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999). A "genuine issue of material fact" is one which, if proven at trial, would result in a reasonable jury finding for the non-moving party. *Doren v. Battle Creek Health Systems*, 187 F.3d 595, 597 (6th Cir. 1999). "At the summary judgment stage, the relevant facts are the plaintiff's version of the facts…." *Walker v. Davis*, 649 F.3d 502, 505 (6th Cir. 2011).

In order to defeat a motion for summary judgment, the non-moving party must present probative evidence that supports the complaint. *Liberty Lobby*, 477 U.S. at 249-250. The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255.

Summary judgment should not be imposed to deny a party an opportunity to present a meritorious claim or defense on his/her "day in court." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). As the Supreme Court stated:

> The witnesses on both sides come to this case with their own perceptions, recollections, and even potential biases. It is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system. By weighing the evidence and reaching factual inferences contrary to [plaintiff's] competent evidence, the [trial] court … neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party.

*Tolan v. Cotton*, 134 S. Ct. 1861, 1868, 188 L.Ed.2d 895, 897 (2014).

### IV. ARGUMENT.

#### A. Plaintiff concedes the sexual harassment claim should be dismissed.

Plaintiff Bruce concedes the claim against Levy for unwarranted sexual harassment should

3

be dismissed based on the applicable facts and current law.

### B. Plaintiff's Claim of Retaliation Under Title VII Should Not Be Dismissed.

Plaintiff Bruce submits there are disputed issues of material facts sufficient to defeat Levy's motion of summary judgment as to the claim of retaliation under Title VII.

### i. Bruce's complaints to Levy of sexual harassment by Jacob Caffey constitute protected activity under Title VII.

Bruce complained to her supervisor, Tim Halterman, when she discovered that Jacob Caffey was sexually harassing another female co-worker, Kayla Costley, while they all worked as suite attendants at Bridgestone Arena. Bruce testified that after receiving word from Costley's mother about Caffey's sexual harassment, she told Halterman about it sometime in November or December 2014, but Halterman failed to act on the complaints. (Deposition of Tina Bruce, p. 107). Halterman testified that the first he heard of any complaints from Bruce about Caffey was in an email dated February 20, 2015. (Deposition of Tim Halterman, pp. 27-28). Bruce described the conduct by Caffey in some detail, pointing out that Costley's mother told her on one occasion Caffey had put a note in his apron with an arrow pointing down to his private area. (Deposition of Tina Bruce, p. 96). Bruce heard Caffey say to Costley that he "was going to tear that thing up." (*Id.*, p. 97). Caffey would also state to Bruce to "suck my d…." (*Id.*, p. 97, 99-100).

The allegations of sexual harassment by Caffey were confirmed by another employee, Eva Bangert, who witnessed some of the same conduct by Caffey toward Costley, including rude and inappropriate gestures where he took a wine bottle and made a motion to simulate masturbation. (Deposition of Eva Bangert, p. 15).

After Halterman received an email from Bruce on February 20, 2015, he finally took action

4

and suspended Caffey on February 23, 2015.  **Exhibit No. 38**.  Halterman obtained a statement from Costley dated February 23, 2015 which confirmed the sexual harassment by Caffey over a period of several weeks.  **Exhibit No. 36**.  Levy terminated Caffey on February 25, 2015 "based on violation of company policy regarding sexual harassment."  **Exhibit No. 39**.  In between those two (2) dates, on February 24, 2015 Halterman issued a verbal warning to Bruce for violation of Levy's attendance policy.  **Exhibit No. 66**.

The "opposition" clause protects conduct by an employee who is not the direct victim of a practice made unlawful under Title VII, but who "opposes" such discrimination against others. *Littlejohn v. City of New York*, 795 F.3d 297, 318 (2nd Cir. 2015).  An employee may "oppose" unlawful harassment or discrimination either by reporting it to the employer or disclosing it in response to questions during an employer's internal investigation.  *Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 555 U.S. 271, 277-278 (2009). Opposition is protected as long as the employee had a reasonable and good faith belief the employer's practice was unlawful.  *Trent v. Valley Elec. Ass'n, Inc.*, 41 F.3d 524, 526 (9th Cir. 1994).

In this action, Tina Bruce was protected under Title VII for opposing and then speaking out against the unlawful sexual harassment which she not only learned about as to Caffey, but also witnessed first-hand.

### ii. Levy admits that Tina Bruce has established a *prima facie* case of retaliation.

Levy admits that Ms. Bruce has stated a *prima facie* retaliation claim, but that the lawsuit should nevertheless be dismissed because Levy has "proffered legitimate, non-discriminatory reasons for her discharge – repeated complaints of bullying in the workplace and Ms. Bruce surreptitiously recording others in the workplace."  (Defendant Levy's Memorandum of Law, pp.

5

8-9). Bruce contends the articulated reasons are mere pretext, and the real reason for her termination on May 5, 2015 was her complaints of sexual harassment to Halterman and Padgett about ongoing sexual harassment in the workplace by Jacob Caffey.

A plaintiff proves pretext "either directly by persuading the court that [an unlawful] reasons more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). In general, a plaintiff may prove by showing the stated reasons for terminating an employee "have no basis in fact, did not actually motivate the discharge or were insufficient to motivate [the] discharge." *Logan v. Denny's, Inc.*, 259 F.3d 558, 574 (6th Cir. 2001).

Evidence of pretext comes in many different forms. A plaintiff may demonstrate pretext by offering evidence to challenge the reasonableness of the employer's decision. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) (en banc). Evidence that the employer "failed to make a reasonably informed and considered business decision, thereby making its decisional process 'unworthy of credence'" is evidence of pretext. *Smith v. Chrysler Corp.*, 155 F.3d 799, 807-808 (6th Cir. 1998); also see Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n.6 (1st Cir. 1979) ("The more idiosyncratic or questionable the employer's reason, the easier it will be to expose as pretext, if indeed it its one."). An employee may prove that his employer's proffered reasons are pretextual by revealing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation. *Wilson v. Rubin*, 104 S.W.3d 39, 50-51 (Tenn. App. 2002) (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002)).

It is the "weaknesses, implausibilities, inconsistencies, incoherences, [and] contradictions" produced in discovery and also witness testimony leading up to the Ms. Bruce's firing on May 5,

6

2015 which establish sufficient evidence that her termination was not motivated by Levy's stated reasons of "bullying" or improper use of a recording device at work, so that the only plausible reason left for her termination was the reports of sexual harassment.

A retaliatory motive can be shown through evidence of a causal connection between protected activity and adverse action. *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). Evidence of this type might include evidence of increased hostility, increased scrutiny, and unwarranted criticism, or other evidence that the employee was treated differently by the employer after engaging in protected activity. *See, e.g., Hamilton v. General Electric*, 556 F.3d 428, 436 (6th Cir. 2009); *Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007); *Moore v. KUKA Welding Syst. & Robot, Inc.*, 171 F.3d 1073, 1080 (6th Cir. 1999). Evidence of causal connection also includes temporal proximity between the protected activity and the adverse employment action. *Hamilton*, 556 F.3d at 428. There is evidence of a temporal proximity between the protected activity of reporting sexual harassment and Ms. Bruce's termination on May 5, 2015. After Jacob Caffey was terminated for violating Levy's sexual harassment policy and after the retaliation continued unchecked against Ms. Bruce by Halterman and Padgett, she contacted Regional Director Rich John on April 20, 2015 after going through the company's "Hotline" about the acts of retaliation. (Deposition of Tina Bruce, p. 227). Johns and Bruce had a lengthy phone conversation where she explained to him about the retaliation, and where Bruce even told Johns she was using a recording device to help "prove [her] innocence" from some of the retaliation that was occurring at Bridgestone. (*Id.*, pp. 231-232).

Evidence of harassment and retaliation by Bruce's manager, Tim Halterman, started almost immediately after she verbally reported to him about Caffey's sexual harassment:

- Bruce testified that Halterman begin to change her "suite assignments" at Bridgestone,

7

- giving her less desirable suites which in turn generated less money for tips, which made up a large portion of her revenue. (Deposition of Tina Bruce, pp. 164-165, 176-177).

- Within a day or two of receiving an email from Bruce about sexual harassment by Jacob Caffey, Halterman issued Bruce a "verbal warning" on February 24, 2015 for being "over 15 minutes late to her scheduled shift." **Exhibit No. 66**. Halterman had never before issued Bruce a verbal warning for such conduct, and in fact the records indicated that Bruce had clocked in "late" on numerous occasions prior to that date, and that it had never been an issue. **Exhibit No. 74**.[2]

- On March 5, 2015, Halterman again gave Bruce a "verbal warning," this time because she "clocked in 20 minutes early to her scheduled shift without the approval of a manager." **Exhibit No. 67**. Levy time records showed there were numerous times Bruce clocked in "early," but on those previous occasions it was without any type of reprisal. **Exhibit No. 74**. A reasonable jury could infer Halterman simply trumped up the charges for either being "late" or "early" so as to create a paper trail to begin the process of terminating Ms. Bruce.

- On March 18, 2015, Crystal Parfitt issued a "written warning" to Bruce based on allegations from an employee on February 25, 2015 that during a concert, Bruce was alleged to have made racial "comments regarding the guest demographic that other team members found offensive and … in violation of our policy to prevent harassment." **Exhibit No. 68**. Essentially, co-worker Lee Dawson accused Bruce

---

2   There is evidence that Ms. Bruce was "grandfathered" into a situated where it was accepted she would at times be late or early due to a second job. (Deposition of Tim Halterman, pp. 42, 109-110). *See E.E.O.C. v. Mid-Continent Sec. Agency, Inc.*, 2000 WL 1793084, at *6 (N.D. Ill. Dec. 5, 2000) ("[A] genuine issue of material fact exists as to whether Campbell was ever absent without permission, particularly given Mid-Continent's admittedly flexible attendance policies.").

8

and another employee, Cassie Coleman, of making disparaging racial remarks to other employees, including a statement that "Black people don't tip" and "They are arrogant." **Exhibit No. 45**. Another employee, Joe Mayes, was also supposed to have heard Bruce make these remarks, but when asked by Levy to write up a statement, Mayes only stated that he heard Coleman make the remarks, and not Bruce. **Exhibit No. 46**. Ms. Bruce denied making the statements, telling Levy 'I don't not (sic) recall saying what I'm being accused of. I'm not a prejudice (sic) person and find these comments insulting." **Exhibit No. 68**. Moreover, Coleman was not fired later for her alleged racist comments or creating a hostile work environment, even though it was confirmed by two (2) separate employees. *See Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779-780 (6th Cir. 2016) (evidence that employer did not fire other employees for engaging in substantially similar conduct is evidence of pretext).

- On April 17, 2015, Halterman issued another "verbal warning" to Bruce for being "late" to work; **Exhibit No. 69**, although as outlined above, there is evidence that Bruce was both late and early to work on other occasions *before* she reported to Halterman about Caffey's sexual harassment, yet no adverse action was taken against her at that time. (Deposition of Tim Halterman, pp. 91-93). **See also Exhibit No. 74**.
- On April 25, 2015, Parfitt and Halterman suspended Bruce for "allegedly recording conversations in the suite pantry without the knowledge of those being recorded." **Exhibit No. 70**.
- On May 5, 2015, Levy terminated Bruce from employment, alleging as reasons the "audio" recordings of "others in the pantry area" and a new reason, which stated in part "repeated reports of Tina bullying other team members which creates an unpleasant

9

work environment for others….” **Exhibit No. 71**.

### iii. The alleged "bullying" statements submitted by three (3) co-workers are not legitimate, non-discriminatory reasons to support Bruce's termination.

Levy wants the Court to believe the three (3) co-workers' (Emily Roebuck, Emily Beckwith and Alex Remar) complaints about Bruce (**Collective Exhibit No. 63**) are part of its legitimate, non-discriminatory reasons for termination as recorded in the Disciplinary Report Form dated May 5, 2015. However, all three statements were written by the trio on *March 1, 2015*, almost two month before the termination of Bruce on May 5. A reasonable jury could infer that if the statements were in fact true, and significant enough to justify Levy's termination of Bruce, then why did it take them almost eight (8) weeks to act on the statements? *See Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 n.11 (5th Cir. 2007) ("[A]n employer's inconsistent explanations for its employment decisions at different times permit a jury to infer that the employer's proffered reasons are pretextual."). *Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002) (inconsistent explanation about employment decisions can "cast doubt" on the truthfulness of those explanations).

In addition, the complaints by Roebuck, Beckwith and Remar were not even mentioned during the write up issued by Parfitt to Bruce on March 18, 2015 when it was alleged she engaged in racist remarks around other employees, which would seem to have been a reasonable opportunity for Padgett to have brought them up if they were considered either serious or believable.3 *See Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) (employer's changing rationale for why it took action is evidence of pretext).

---

3    Bruce testified she was never confronted with these statements until her termination, and then it was only in vague terms.

10

Ms. Bruce denied that she "bullied" or otherwise intimidated the employees while working with them at Bridgestone. (Declaration of Tina Bruce, ¶¶ 4-8). An affidavit under Rule 56 may create an issue of material fact and preclude summary judgment even if it is self-serving and uncorroborated. *Mays v. United States*, 763 F.2d 1295, 1297 (11th Cir. 1985).

Under Rule 56 of the Federal Rules of Civil Procedure, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-151 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The Court in *Reeves* went on to state:

> Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. See *Wright & Miller* 299. That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'

*Reeves*, 530 U.S. at 151 (internal citation omitted).

Levy further alleges a number of times Tim Halterman thought Ms. Bruce were "very abrasive … to the point of bullying, [and] confrontational." (Defendant's Memorandum of Law, p. 12). Halterman even testified he was "scared" of Bruce because she was so "abrasive and confrontational." *Id*. Interestingly enough, Bruce's performance review dated January 28, 2015 was considered a better than satisfactory evaluation, where she scored high marks on many categories. **Exhibit No. 64.** Bruce received a total of 3 "outstanding" marks, and 8 "very good" marks during the evaluation administered by Halterman. *Id*. Halterman wrote in part, "Tina is a great asset to our team and has been for many years." *Id*. This hardly seems to be the evaluation of an employee who generated fear in the workplace, so that a jury should decide if that was in fact

11

true.  Halterman testified there was nothing in the performance evaluation to prove Ms. Bruce was a "bully" or "confrontational" toward other employees or management.  (Deposition of Tim Halterman, pp. 22-23).  Halterman goes on to allege that because of her "constant questioning [of] his decisions and scheduling," that he "lost sleep."  (*Id.*, p. 125).  When pressed, Halterman stated that he did not have to seek any counseling for this alleged conduct.  (*Id.*, p. 127).

   Levy also alleges that another non-discriminatory reason for Ms. Bruce's termination was a confrontation Halterman witnessed in the pantry between Bruce and Aryel Bax, another co-worker.  (Defendant's Memorandum of Law, p. 13).  Again, Halterman described the conduct of Bruce as "bullying" although there was never a write up for the alleged incident.  In addition, Halterman testified there was no physical contact by Bruce, and "I think probably both were raising their voice --- to each other.  I wouldn't call it yelling … it didn't get that heated." (Deposition of Tim Halterman, p. 77).  Halterman's perspective of this "confrontation" is subjective at best, and not the type of evidence which the court should use to justify Ms. Bruce's dismissal.  *See Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 648-649 (6th Cir. 2015), where the Sixth Circuit frowned on "tone of voice" or "manner of speaking" to justify an employee's termination in a Title VII retaliation claim.  "Perception of a person's manner of speaking is inherently subjective, and therefore we must leave it to the jury to decide whether they believe Yazdian's or Sweatt's account of the conversation.".  *Id*.

   **iv.   The recording of other employees was protected activity based on the level of harassment and retaliation experienced by Ms. Bruce.**

   Admittedly, Ms. Bruce utilized a tape recorder at work over a period of several days as a result of the chronic and persistent retaliation and episodes of harassment she experienced because of her immediate supervisor, Tim Halterman.  As Bruce explained in a phone conversation with

12

Rich Johns shortly before she was brought up on charges and suspended from employment, she felt that she needed the recorder to "prove my innocence." (Deposition of Bruce, pp. 231-232). Significantly, when Bruce explained to Johns about her use of the tape recorder, he seemed to agree and stated "he agreed that standing up for sexual harassment, whether it was third party or for myself, that I did the right thing." *Id.,* p. 232. *See Harris v. JB Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010) (testimony alone can be sufficient to create a jury question regarding an issue of a material fact). Clearly, there were no laws violated since Ms. Bruce kept the recorder on her person and was always a party to the conversation. However, Levy has a policy against "personal electronic technology" in the workplace, although it is arguably if this definition encompasses a tape recorder used by an employee attempting to document acts of retaliation and harassment by a supervisor.

Even though Levy's contends tape recording in the workplace is grounds for termination, there is precedent to support an employee tape-recording at work as part of protected activity. In *Heller v. Champion International Corp.*, 891 F.2d 432 (2nd Cir. 1989), the Second Circuit considered the impropriety of an employee in an age discrimination case secretly recording certain conversations with his supervisors. The Court stated:

> His surreptitious tape-recording, to be sure, represents a kind of "disloyalty" to the company, but not necessarily the kind of disloyalty that under these circumstances would warrant dismissal as a matter of law. The Age Discrimination in Employment Act prohibits employers from discharging individuals because they have "participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d) (emphasis added). Under this provision, we have held that it was protected activity to draft a memo containing evidence of age discrimination, ask the company's president to approve the memo without revealing its true purpose, and then use the signed memo in a subsequent lawsuit against the company. *See Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1569-70 (2d Cir.1989). Other courts have found similarly "disloyal" acts to be protected under Title VII. *See EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012-14 (9th Cir.1983) (writing letter to customer of employer complaining about inadequacies

13

in employer's affirmative action program).

*Heller*, 891 F.2d at 436.

A more recent case seems to the logic announced in *Heller* if there is evidence the employee is attempting to protect themselves from retaliation or gather evidence in anticipation of a claim. In *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312 (7th Cir. 2011), the Seventh Circuit reversed the district court's grant of summary judgment, finding there was nothing improper when the plaintiff took photos of a work area in violation of company policy after he believed the photos showed evidence of racial discrimination against African Americans.

> Best Pallet says that it fired Loudermilk not because of the note's content, but because he had taken pictures of the work site, in violation of company policy. But it did not give that explanation to Loudermilk—or for that matter the EEOC. Best Pallet told the agency that it let Loudermilk go as part of a reduction in force (though Loudermilk's name was not on a list of workers that had been prepared for that purpose). In court it abandoned that explanation and contended that Loudermilk had resigned, or that his departure was a 'mutual decision.' Since Loudermilk says that he did not resign, that explanation can't prevail at the summary judgment stage. This led to the 'fired for photography' contention, which is problematic not only because the no-photography policy may have been cooked up after the fact, but also because it comes close to *conceding* retaliation. *If the reason that Loudermilk snapped the photos was to bolster his claim of discrimination, then forbidding picture-taking looks a lot like an attempt to block the gathering of evidence during an investigation.*

*Loudermilk*, 636 F.3d at 315 (emphasis supplied). *Also see Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 474 Mass. 382, 50 N.E.3d 778 (Mass. 2016), where the Massachusetts Supreme Court addressed whether plaintiff's retention of certain documents violated office policy and supported its legitimate, non-discriminatory business reason for her termination. Ultimately, the Court reversed summary judgment on plaintiff's claim of retaliation for other reasons, but made the following observations as it pertained to plaintiff's "self-help discovery." Relying in part on language from the Sixth Circuit, *Verdrager* stated:

14

> The question whether an employee's acts of self-help discovery in aid of claims under G.L. c. 151B, § 4, may ever, under any circumstances, constitute protected activity is one of first impression for this court. Taking into consideration the interests at stake and the views of other courts that have addressed the matter, *we conclude that such conduct may in certain circumstances constitute protected activity under that statute, but only if the employee's actions are reasonable in the totality of the circumstances.* See *Niswander v. Cincinnati Ins. Co.,* 529 F.3d 714, 725 (6th Cir.2008) ('oppositional activity must be reasonable in order to receive protection').

474 Mass. at 410 (emphasis supplied).

It seems reasonable in this day and age when every employee has some type of recording device on their person at all times in terms in the form of a cell phone for Levy to now to single out Ms. Bruce for use of a tape recorder at work. She was not taping a concert or performance. She was simply exercising an act of "self-help" which the courts have determined to be reasonable under some circumstances. Accordingly, Bruce exercised reasonable conduct under the circumstances when she brought a tape recorder to work based on acts of harassment and retaliation at the time.

### v. Levy's reliance on the "honest belief" rule is misplaced.

Levy relies on the "honest belief" rule to justify its decision to terminate Ms. Bruce in spite of the inconsistencies leading up to her termination on May 5, 2015.[4] For the Court to grant summary judgment to Levy based on its honest belief to terminate Ms. Bruce, it would involve improper fact-finding and conclusions of inferences which are not permitted under Rule 56. The Court would essentially be concluding that no reasonable jury could disagree about Levy's proffered explanation for its decision to terminate Ms. Bruce in light of the contradictory proof leading up to her termination. This is not possible. A court is not bound to "blindly assume that

---

4 Levy principally relies on *Fleming v. Sharp Manufacturing Co. of America*, 2012 WL 3049624 (W.D. Tenn. Jul. 25, 2012), although *Fleming* does not discuss the "honest belief" rule.

15

an employer's description of its reasons is honest…." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

In addition, protection under the "honest belief" rule is not automatic. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) ("Therefore, '[w]hen the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process "unworthy of credence," then any reliance placed by the employer in such a process cannot be said to be honestly held.'"). Where, as here, the proffered reasons did not actually motivate Bruce's termination or was insufficient to motivate her termination, the honest belief rule simply has no application. *See Vaden v. Dekalb Tel. Co-op., Inc.*, 21 F.Supp.3d 901, 913-914 (M.D. Tenn. 2014) ("Plaintiffs have presented evidence from which a jury could plausibly question the reasonableness of Gates's investigation and conclusion."). *Id.* at. 914.

If, as here, a plaintiff argues that the proffered reasons offered by the Defendant did not actually motivate the termination or was insufficient to motivate the termination, the honest belief rule has no application." *See Hawthorne v. University of Tennessee*, 203 F.Supp.3d 886, 892, fn. 4 (E.D. Tenn. 2016) (internal citations omitted). The contradictions of when alleged statements of "bullying" by other employees occurred or first brought to anyone's attention, along with discrepancies in the manner in which Levy terminated Plaintiff based on suspicious write-ups by Tim Halterman that either never happened or could not be explained, all lead a reasonable jury to conclude Levy's proffered reason was pretextual. *See Lott v. ICS Merrill*, 483 F. App'x 214 (6th Cir. 2012), where Sixth Circuit reversed summary judgment after the district court's application of the honest belief rule. "Lott has also offered evidence that he was never warned of a problem with the timeliness of his reports until March 2008, despite supposed problems dating back to the fall of

16

2007." *Id.*, p. 220. In addition, Ms. Bruce categorically denied "bullying" others in the workplace. *See Vaden, supra*, 21 F.Supp.3d at 914 ("plaintiffs vigorously deny they were involved in copper theft….").

As demonstrated from the inconsistencies and subjective explanations by Levy of alleged "bullying" and acts of "abrasiveness and confrontation," Levy's stated reasons for terminating Bruce could not have actually motivated her dismissal, or were insufficient to motivate her termination. A jury could conclude the true reason was for reporting sexual harassment about Jacob Caffey, and when Tim Halterman dragged his feet in responding to the complaint, Bruce going to Crystal Parfitt about the harassment. Then, when the retaliation continued Bruce went over both their heads to Rich Johns in Atlanta. Thus, Levy's subjective reasons for Plaintiff's termination were pretextual.

## V. CONCLUSION.

There is proof in the record to substantiate Plaintiff's claim of retaliation under Title VII of the Civil Rights Act of 1964, as amended. Defendant Levy's motion for summary judgment as to the claim of retaliation should be denied.

        **THE LAW OFFICE OF DAVID L. COOPER, PC**

        BY: David L. Cooper
        **DAVID L. COOPER BPR# 11445**

        Third Avenue North Building
        208 Third Avenue, North
        Suite 300
        Nashville, TN 37201
        (615) 256-1008

        *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

      I certify that a true and correct copy of the **Plaintiff's Response to Defendant's Motion for Summary Judgment** has been delivered by the CM/ECF system to **Courtney Leyes, Esq.**, FISHER & PHILLIPS, LLP, 1715 Aaron Brenner Drive, Suite 312, Memphis, TN 38120 on this 12th day of February, 2018.

                                                    _David L. Cooper_
                                                    **DAVID L. COOPER**